UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CYNTHIA LOVOLD, a single person, ) | |
| ) | CASE NO. C11-569Z |
| Plaintiffs, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| FITNESS QUEST INC., a foreign corporation ) | |
| doing business in Washington State, ) | |
| ) | |
| Defendant. ) | |

THIS MATTER comes before the Court on a motion for summary judgment, docket no. 21, brought by Defendant Fitness Quest, Inc. In this action, Plaintiff alleges six claims with respect to Defendant's product Leg Magic: (1) defective design; (2) failure to warn; (3) breach of warranty; (4) defective manufacture; (5) negligence; and (6) violation of Washington's Consumer Protection Act. Pl.'s Comp., docket no. 2, at 2–3. Having reviewed all papers filed in support of, and in opposition, to each motion, the Court enters the following Order.

MINUTE ORDER -1

## BACKGROUND

Plaintiff is a single woman injured while using a piece of exercise equipment called Leg Magic. Plaintiff initiated this product liability case in King County Superior Court on February 25, 2011. Defendant Fitness Quest, Inc. manufactures Leg Magic and is a foreign corporation doing business in Washington State. On April 4, 2011, Defendant removed this matter to federal court pursuant to 28 U.S.C. §§ 1332 and 1441.

Plaintiff purchased Leg Magic at a local Target store. Ross Decl., Ex. C (docket no. 22-3) Lovold Dep. 29 at 30:15. The Plaintiff felt pain in her left thigh muscle while using the product on February 19, 2011. Ross Decl., Ex. C (docket no. 22-3) Lovold Dep. 49 at 50:9. Doctors later diagnosed Plaintiff with a torn groin muscle. Ross Decl., Ex. C (docket no. 22-3) Lovold Dep. 50 at 51:15.

Plaintiff seeks damages for health care expenses, pain and suffering, disability and loss of enjoyment of life, as well as future damages. Pl.'s Comp., docket no. 2, at 4. Plaintiff did not propound any discovery to Defendant, did not take any depositions, and did not identify an expert to testify on her behalf. Ross Decl., Ex. B (docket no. 22-2). Defendant argues that Plaintiff's injury alone, absent evidence of product defect or expert testimony, is insufficient to support her claims.

///

///

///

## DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A moving party meets his initial burden on summary judgment by showing that there is a lack of evidence supporting the nonmoving party's case. Celetox Corp. v. Catrett, 47 U.S. 317, 325, 106 S. Ct. 2548 (1986). When the moving party meets this burden, the adverse party must provide admissible evidence demonstrating that a genuine issue for trial exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual issue is genuine and precludes summary judgment when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248, 106 S. Ct. 2505. "In general, an affidavit containing admissible expert opinion on an ultimate issue of fact is sufficient to create a genuine issue as to that fact, precluding summary judgment." Pagnotta v. Beall Trailers of Oregon, Inc., 99 Wn. App. 28, 34 (quoting J.N. v. Bellingham Sch. Dist. No. 501, 74 Wn. App. 49, 60–61 (1994)).

### B. Defective design

If a product's design is defective, then strict liability attaches to the manufacturer. Seattle-First Nat'l Bank v. Tabert, 86 Wn.2d 145, 149 (1975) (internal citations omitted). "The doctrine of strict liability does not impose legal responsibility simply because a product causes harm." Id. at 150 (internal citations omitted). Design defect in a product liability claim requires a

showing that (1) a manufacturer's product (2) is not reasonably safe as designed and (3) harm resulted to the plaintiff. Under the second element of a defective design claim, a plaintiff can prove that the product was not reasonably safe by one of two tests: The risk-utility test or the consumer expectation test. <u>Pagnotta</u>, 99 Wn. App. at 36.

### 1. Risk utility test

If a plaintiff relies on the risk-utility test, Plaintiff must prove the existence of an adequate alternative design to show that the likelihood and seriousness of harm caused by the product outweighed the manufacturer's cost and opportunity to design a product that would not have caused that harm. <u>Ruiz-Guzman v. Amvac Chem. Corp.</u>, 141 Wn.2d 493, 503 (2000). Defendant argues that Plaintiff failed to meet her burden under the risk-utility test because (1) Plaintiff designated no expert and (2) Plaintiff presented no alternative design that would render Leg Magic a safer product.

No Washington case law suggests that a plaintiff is required to present expert testimony under the risk-utility test.[1] Rather, when relying on the risk-utility test, plaintiffs must prove the existence of an adequate alternative design. <u>Id.</u> "A plaintiff can satisfy its burden of proving an alternative design by showing that another product 'more safely serve[s] the same function as the challenged product.'" <u>Id.</u>

---

[1] Defendant cites <u>Bruns v. PACCAR, Inc.</u>, 77 Wn. App. 201, 208 (1995) and <u>Wagner v. Flightcraft, Inc.</u>, 31 Wn. App. 558 (1982), for the proposition that expert testimony is required in risk-utility cases. While <u>Bruns</u> and <u>Wagner</u> required expert testimony, both cases were decided under the consumer expectations test, and later distinguished in <u>Pagnotta</u>, 99 Wn. App. 28. Therefore, Defendant's reliance on <u>Bruns</u> and <u>Wagner</u> is misplaced.

MINUTE ORDER - 4

Plaintiff's claim fails under the risk-utility test as a matter of law because she did not submit expert testimony or offer any evidence of an alternative design.   Plaintiff did not allege any defects in Leg Magic, and failed to identify what, if any, alternative design could more safely serve the same purpose and the challenged product at a comparable cost and in a similar manner. Ruiz-Guzman, 141 Wn.2d at 503.   Therefore, Plaintiff failed to meet her burden under the risk-utility test as a matter of law.

### 2. Consumer expectations test

Under the consumer expectations test, if a product is unsafe to an extent beyond that reasonably contemplated by an ordinary consumer, then the product is unreasonably dangerous and is necessarily defective.   Tabert, 86 Wn.2d at 154.   "The ordinary consumer evaluates a product in terms of safety, recognizing that virtually no product is or can be made absolutely safe."   Id.   In determining the reasonable expectations of the customer, courts consider the following factors: (1) the relative cost of the product; (2) the gravity of the potential harm from the claimed defect; (3) the cost and feasibility of eliminating or minimizing the risk; (4) the nature of the product; and (5) the nature of the claimed defect.   Id.

Under the consumer expectations test, circumstantial evidence is sufficient to establish a product defect.   Potter v. Schermerhorn Brothers, Inc., 19 Wn. App. 746, 756 (1978).   Expert testimony of the exact defect is not an indispensible element of Plaintiff's case.   Pagnotta, 99 Wn. App. at 38.   For example in Pagnotta, where the court held that summary judgment in favor of the defendant was improper, the plaintiff presented testimony of an experienced state trooper who was

not an expert in accident reconstruction, but did have training and interviewed witnesses at the scene of an accident that occurred when a truck axel broke. Id. at 31. But unlike Pagotta—where the plaintiffs presented evidence of product defect in the form of lay testimony—here not only did the Plaintiff fail to designate an expert, she also failed to provide any evidence that an average purchaser of Leg Magic would not anticipate tearing a muscle while using the product. Additionally, Plaintiff in this case failed to address any of the Tabert factors. Thus, Plaintiff did not present either direct or circumstantial evidence from which a jury could find that Leg Magic was defective.

Plaintiff argues that she can prevail under the consumer expectations test—despite the absence of direct or circumstantial evidence—under a theory similar to res ipsa loquitor. The mere fact of an accident, standing alone, does not generally make out a case that a product was defective." Bombardi v. Pochel's Appliance and TV Co., 10 Wn. App. 243, 247 (1974). But "there are some accidents as to which there is a common experience dictating that they do not ordinarily occur without a defect, and as to which the inference that a product is defective should be permitted." Id. at 246.

> In the type of case in which there is no evidence, direct or circumstantial, available to prove exactly what sort of manufacturing flaw existed, or exactly how the design was deficient, the plaintiff may nonetheless be able to establish his right to recover, by proving that the product did not perform in keeping with the reasonable expectations of the user. When it is shown that a product failed to meet the reasonable expectations of the user the inference is that there was some sort of defect, a precise definition of which is unnecessary. If the product failed under conditions concerning which an average consumer of that product could have fairly definite expectations, then the jury would have a basis for making an informed judgment upon the existence of a defect.

Id. at 247.

In <u>Bombardi</u>, a couple awoke to a television set on fire, and three expert witnesses all agreed the television set was the cause of the fire. Id. at 246. The court determined that the television was defective, despite the fact it was completely destroyed, because it was apparent that the television performed in an unreasonably dangerous manner uncontemplated by any user or consumer. Id. But in this case, Plaintiff's alleged injury of a muscle tear while using Leg Magic is not the sort of accident that can alone establish a product defect because a muscle tear is not a highly unusual injury during the course of exercise. Plaintiff has failed to provide any other evidence of what the reasonable expectations of the consumer would be in this case. Therefore, Plaintiff's defective design theory fails as a matter of law.

**C. Failure to warn**

Liability for failure to warn is outlined in RCW 7.72.030(1)(b), which provides that:

> A product is not reasonably safe because adequate warnings or instructions were not provided with the product, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instruction which the claimant alleges would have been adequate.

RCW 7.72.030(1)(b). Plaintiffs can prove inadequate warnings in one of two ways: A balancing test or a test based on the ordinary consumer.

RCW 7.72.030(1)(b) provides a balancing test in which liability can be established if "the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the

MINUTE ORDER -7

manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate." Id. Leg Magic's manual includes several warnings. On page two, it recommends that users consult with a physician and start out slowly, and also warns users to not overexert themselves. Ross Decl., Ex. D (docket no. 22-4) at 2. The exercise guidelines that appear later in the manual again warn users to consult with a physician, especially if he or she has a history of heart trouble. Ross Decl., Ex. D (docket no. 22-4) at 13. Plaintiff presents no evidence with respect to the alleged inadequacies of the manual that accompanied Leg Magic, nor does she point to specific warnings that were problematic. Thus, Plaintiff did not present a genuine issue of material fact with respect to this test.

A plaintiff can also prove inadequate warnings rendered the product "unsafe to an extent beyond that which would be contemplated by the ordinary consumer." RCW 7.72.030(3). However in this case, the manual warned that "Failure to follow these instructions could result in serious injury or death." Ross Decl., Ex. D (docket no. 22-4) at 17. After reading such a warning, no reasonable consumer could credibly claim he was unaware of the potential for a torn muscle. Moreover, Plaintiff admitted to reading the manual, Ross Decl., Ex. C (docket no. 22-3) Lovold Dep. 56 at 57:22, and watching the DVD, Ross Decl., Ex. C (docket no. 22-3) Lovold Dep. 37 at 38:15. Plaintiff argues her injury alone is sufficient to establish inadequate warnings because she followed the directions exactly and the injury still occurred. Yet in her deposition, Plaintiff admitted that she did not consult with her doctor prior to using the equipment, Ross Decl., Ex. C (docket no. 22-3) Lovold Dep. 65 at 66:9, as the manual recommends for those who have a history

of heart conditions. Ross Decl., Ex. D (docket no. 22-4) at 13. Where the product-connected danger is known, the manufacturer has no duty to warn. Lamon v. McDonnell Douglas Corp., 19 Wn. App. 515, 523 (1978). Thus, because Plaintiff read the warnings and was aware of the danger, but chose not to follow the instructions, Defendant had no further duty to warn. Because Plaintiff did not establish a genuine issue of material fact with respect to the inadequacies of any warning, she cannot establish that an inadequate warning proximately caused her injury. Thus, Plaintiff's failure to warn claim fails as a matter of law.

**D. Breach of express warranty**

Implied warranties are subsumed within the Products Liability Act, and therefore Plaintiff must rely on express warranties to support this claim. In Washington,

> A product is not reasonably safe because it did not conform to the manufacturer's express warranty, if
>
> (1) the warranty is made part of the basis of the bargain;
> (2) the warranty relates to a material fact or facts concerning the product; and
> (3) the warranty turns out to be untrue.

WPI 110.01.01. In this case, Plaintiff presented no evidence regarding what warranties are at issue, whether they were the basis of the bargain, whether the warranty relates to a material fact, and that the warranty was untrue. Therefore, Plaintiff's breach of express warranty claim fails as a matter of law.

///

///

### E. Defective Manufacture

Because Plaintiff failed to establish any witness testimony or documentary evidence that Leg Magic departed from the manufacturing specifications, this claim fails as a matter of law.

### F. Negligence

Plaintiff's negligence claim is included with her product liability claim, and thus fails as a matter of law. In Washington, the Product Liability Act "created a single cause of action for product-related harms, and supplants previously existing common law remedies, including common law actions for negligence." Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 322 (1993).

### G. Consumer Protection Act

Plaintiff's Consumer Protection Act (CPA) claim is not encompassed within Washington's product liability law. "The PLA does allow claimants to bring a Consumer Protection Act claim since that cause of action has been specifically exempted from the preemptive effect of the product liability act." Id. at 1066–67. But while the Product Liability Act does not bar a CPA claim, Plaintiff still must establish the elements of her claim. In this case, Plaintiff's sole basis for liability under the CPA is the fact that violations of the Washington Products Liability Act are also violations of the CPA. Pl.'s Comp. at 2–3. Thus, because Plaintiff's product liability action fails as a matter of law, Plaintiff's CPA claim likewise fails as a matter of law.

///

///

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment and DISMISSES the case with prejudice. Plaintiff failed to establish a genuine issue of material fact regarding a design defect in Leg Magic. Plaintiff's theory fails under the risk-utility test because she did not present any alternative design theory. Plaintiff's theory of design defect also fails under the consumer expectations test because her injury is not the sort of accident that warrants an inference of product defect.

Plaintiff failed to establish a failure to warn claim pursuant to RCW 7.72.030(1)(b) because she provided no evidence that the warnings of the product were inadequate. Plaintiff also failed to establish a breach of warranty claim because she provided no express warranty that Defendant allegedly breached or any supporting evidence regarding the breach. Plaintiff's manufacturing defect claim does not establish a genuine issue of material fact because she provided no evidence that the manufacture of Leg Magic departed from manufacturing specifications. Plaintiff's negligence claim fails because the cause of action is included within the Product Liability Act. Lastly, Plaintiff's Consumer Protection Act claim fails because she presented no evidence regarding a violation of the Act.

The Clerk is DIRECTED to enter judgment in favor of Defendant Fitness Quest, Inc., to send copies of this Order to all counsel of record, and to CLOSE this case.

///

///

IT IS SO ORDERED.

DATED this 16th day of February, 2012.

*Thomas S. Zilly*
THOMAS S. ZILLY
United States District Judge

MINUTE ORDER -12